

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**************************************************************************

| | | |
|---|---|---|
| FIRST MIDWEST BANK – DEERFIELD BRANCHES, MIDCOUNTRY BANK, | * * * * | CIV 06-4114 |
| Plaintiffs, | * * | |
| -vs- | * * | MEMORANDUM OPINION AND ORDER |
| METABANK, fka FIRST FEDERAL SAVINGS BANK, | * * * | |
| Defendant. | * * | |

**************************************************************************

Pending before the Court is Plaintiffs' motion to remand this case to the South Dakota Circuit Court, Second Judicial Circuit, Minnehaha County. (Doc. 16.) After the motion to remand was fully briefed by the parties, the Court was notified by Defendant, Metabank, of an amendment to the Homeowners' Loan Act that President Bush signed on October 13, 2006. The parties were allowed to submit briefs regarding the effect the amendment has on diversity jurisdiction in this case. Having received and reviewed the briefs, the Court finds oral argument is unnecessary and, for the following reasons, the motion to remand will be denied.

## BACKGROUND

First Midwest Bank - Deerfield Branches ("First Midwest") and MidCountry Bank ("MidCountry") commenced this action against Defendant in state court. Plaintiffs assert claims for breach of contract, negligence, gross negligence, negligent misrepresentation, fraud in the inducement, unjust enrichment, and breach of fiduciary duty. The claims arise out of the Defendant's placing of a loan with Plaintiffs. After service of the Summons and Complaint, Defendant removed the action to this Court, alleging that diversity jurisdiction exists under 28 U.S.C. § 1332. Plaintiffs filed the Motion to Remand, arguing that Defendant has failed to establish diversity jurisdiction.

The parties do not dispute that the amount in controversy exceeds $75,000, or that First Midwest is a state chartered commercial bank with its principal place of business in Centerville, South Dakota, that MidCountry is a federally chartered savings bank with its principal place of business in Hutchinson, Minnesota, or that Defendant is a federally chartered savings bank with its principal place of business in Storm Lake, Iowa. These facts are set forth in both the Complaint filed by Plaintiffs and the Notice of Removal filed by Defendant.

The issue raised by Plaintiffs' motion for remand is whether Defendant is an Iowa citizen for the purpose of diversity jurisdiction. Until the recent amendment to the Homeowners' Loan Act[1], there were no statutory provisions identifying whether and under what circumstances federal savings banks were considered citizens of a particular state for the purpose of determining diversity jurisdiction, or how such state citizenship is determined. When faced with the issue, courts applied a test developed to determine if a federally chartered corporation's activities were sufficiently "localized" to be deemed a citizen of a state. *See, e.g., Loyola Federal Savings Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (The factors considered in deciding if a federally chartered corporation engages in "localized" business activities include "the corporation's principal place of business, the existence of branch offices outside the state, the amount of business transacted in different states, and any other data providing evidence that the corporation is local or national in nature.") *See also J.C. Engelmeyer v. Production Credit Ass'n of the Midlands*, 652 F.Supp. 1235 (D.S.D. 1987) (applying the test to a production credit association chartered under the Farm Credit Act). Defendant submitted information to prove that its activities are sufficiently "localized" in Iowa to make it a citizen of that state. Plaintiffs provided information to show that Defendant has set up operations in more than one state and has directed its activities nationally, thus making Defendant a national citizen incapable of invoking diversity jurisdiction.

---

[1]Defendant's charter was issued pursuant to the Homeowners' Loan Act, 12 U.S.C. § 1461.

While considering the parties' respective positions on the motion to remand, the Court was advised of the amendment to the Homeowners' Loan Act, which was passed as section 403 of the Financial Services Regulatory Relief Act of 2006.  The amendment provides:

> SEC. 403.   CLARIFYING CITIZENSHIP OF FEDERAL SAVINGS ASSOCIATIONS FOR FEDERAL COURT JURISDICTION.
>
> Section 5 of the Home Owners' Loan Act (12 U.S.C. 1464) is amended by adding at the end the following:
>
> "(x) HOME STATE CITIZENSHIP. - - In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office.".

The amendment is codified at 12 U.S.C. § 1464(x).  It is undisputed that Defendant's Federal Stock Charter provides that "[t]he home office of the savings bank shall be located at Storm Lake, in Buena Vista County, State of Iowa." (Doc. 1, Ex. 4 at ¶ 3.)  The issue now before the Court is whether the amendment applies to cases pending at the time of enactment.  If it applies, Defendant has established the existence of diversity jurisdiction.  Defendant argues that it applies; Plaintiffs argue that it does not apply.

## DISCUSSION

In general, the Supreme Court applies to pending cases a new jurisdictional rule that "simply changes the tribunal that is to hear the case." *Landgraf v. USI Film Products*, 511 U.S. 244, 274 (1994) (amendments to Title VII of Civil Rights Act not applied to cases pending at the time of enactment because amendments affected substantive rights).  The Court in *Landgraf* stated:

> We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed. Thus, in *Bruner v. United States*, 343 U.S. 112, 116-117, 72 S. Ct. 581, 584-585, 96 L.Ed. 786 (1952), relying on our "consisten[t]" practice, we ordered an action dismissed because the jurisdictional statute under which it had been (properly) filed was subsequently repealed. [Citations omitted.] Conversely, in *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 607-608, n. 6, 98 S. Ct. 2002, 2005, n. 6, 56 L.Ed.2d 570 (1978), we held that, because a statute passed while

3

the case was pending on appeal had eliminated the amount-in-controversy
requirement for federal-question cases, the fact that respondent had failed to allege
$10,000 in controversy at the commencement of the action was "now of no moment."
[Citations omitted.] Application of a new jurisdictional rule usually "takes away no
substantive right but simply changes the tribunal that is to hear the case." *Hallowell
[ v. Commons ]*, 239 U.S. 506, 508, 36 S. Ct. 202, [60 L.Ed. 409 (1916) ]. Present
law normally governs in such situations because jurisdictional statutes "speak to the
power of the court rather than to the rights or obligations of the parties." *Republic
Nat. Bank of Miami [v. United States ]*, 506 U.S. [80,] 100, [113 S. Ct. 554, 121
L.Ed.2d 474 (1992)] (Thomas, J., concurring).

*Landgraf*, 511 U.S. at 274. As the language in *Landgraf* reflects, the Supreme Court has readily

applied legislation affecting jurisdiction retroactively. Another example of the Supreme Court's

application of a statute enlarging jurisdiction is found in *United States v. State of Alabama*, 362 U.S.

602 (1960). There, the government brought a civil rights action against the state of Alabama at a

time when such lawsuits against states were barred. The district court dismissed the action, and the

court of appeals affirmed. While the case was pending before the Supreme Court, Congress passed

the Civil Rights Act of 1960, which allowed such actions against a state. The Supreme Court

reversed the dismissal and remanded because, by virtue of the new law, the district court now had

jurisdiction.

The Eighth Circuit follows this practice and has applied new jurisdictional statutes to pending

cases. *See, e.g., Federal Deposit Ins. Corp. v. Kasal*, 913 F.2d 487 (8th Cir. 1990); *In re Resolution

Trust Corp.*, 888 F.2d 57 (8th Cir. 1989). In its original decision filed two days prior to the passage

of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), the Eighth

Circuit in *In re Resolution Trust Corp.* held that it had no jurisdiction to review a district court order

remanding the case to Arkansas state court. The Resolution Trust Corporation ("RTC") filed a

timely petition for rehearing arguing that the newly enacted section 501(l)(3) of FIRREA clearly

gave the Court jurisdiction to hear the appeal. The Eighth Circuit held that FIRREA applied,

stating: "If a case is still pending when the new statute is passed, new procedural or jurisdictional

rules will usually be applied to it." *Id.* at 58. The Eighth Circuit exercised jurisdiction over the case.

Similarly, in *Kasal*, the Eighth Circuit reversed the district court's ruling that it lacked subject matter

jurisdiction over counterclaims against the FDIC -receiver. The case was pending when sections

209(3) and (4) of FIRREA were enacted, giving federal courts jurisdiction to hear counterclaims against the FDIC as receiver of a failed bank. The Eighth Circuit applied the statutes and held that the district court had jurisdiction over the counterclaims. *See Kasal*, 913 F.2d at 493.

It is clear that 12 U.S.C. § 1464(x) should be applied to the present case. By declaring that federal savings banks are citizens of their home state for the purpose of determining diversity jurisdiction, 12 U.S.C. § 1464(x) has nothing to do with substantive rights; it speaks only to the power of the court to hear cases, and it clarifies that federal courts have diversity jurisdiction in certain cases involving federal savings banks.

Plaintiffs rely on *Hamdan v. Rumsfeld*, - - - U.S. - - -, 126 S. Ct. 2749 (2006), in support of their argument that 12 U.S.C. § 1464(x) should not be applied to this case. In *Hamdan*, a 5 to 3 majority[2] of the United States Supreme Court reversed the D.C. Circuit, holding that the military commission convened by President Bush to try a suspected terrorist held in Guantanamo Bay lacked the power to proceed because its structure and procedures violated the Uniform Code of Military Justice and the Geneva Conventions. The majority opinion began by denying the government's motion to dismiss based on § 1005(e)(1) of the Detainee Treatment Act of 2005 ("DTA")[3], which provides that no court shall have jurisdiction to hear an application for habeas corpus filed by an alien detained at Guantanamo Bay. No provision of the DTA stated whether subsection (e)(1) applied to pending cases. The government argued that this subsection had the immediate effect, upon enactment, of repealing federal jurisdiction over detainee actions pending in any federal court. The Supreme Court found that the statute was ambiguous with respect to the removal of jurisdiction over pending habeas actions because subsections (e)(2) and (e)(3) (creating a new appeals process

---

[2]Chief Justice Roberts did not participate.

[3]Among other things, the DTA added a subsection (e) to the federal habeas statute, 28 U.S.C. § 2241. Subsections (e)(2) and (e)(3) provide for exclusive judicial review of military commissions and detention decisions. Subsection (h) of the DTA states that subsections (e)(2) and (e)(3) "shall apply with respect to any claim . . . that is pending on or after the date of the enactment of this Act." DTA § 1005(h).

for military commissions and detention decisions) expressly applied to all cases "pending on or after the date of . . . enactment." *Hamdan*, 126 S. Ct. at 2762-69. The Court stated, "A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Id.* at 2765. Thus, the Supreme Court decided that Congress' failure to include language that subsection (e)(1) applied to pending habeas actions was a deliberate choice. Congress made this choice "after having been presented with the option," of including the language, and "[t]he omission [wa]s an integral part of the statutory scheme." *Id.* at 2769. Accordingly, the Supreme Court refused to dismiss Hamdan's habeas case for lack of jurisdiction.[4]

The holding in *Hamdan* clearly rested on statutory construction of § 1005 of the DTA after the Supreme Court found it to be ambiguous because Congress specified that subsections (e)(2) and (e)(3) were to apply to pending cases but was silent as to subsection (e)(1). A similar negative inference does not arise from the language of 12 U.S.C. § 1464(x). Although the parties disagree whether 12 U.S.C. § 1464(x) applies to cases pending at the time of enactment, the statute is not ambiguous and there is no need to undertake statutory interpretation in order to decide the retroactivity issue. The reasoning of *Hamdan* has no bearing in this case, and the Court will follow the Supreme Court's consistent practice of applying jurisdictional statutes to cases pending when the statute was enacted.

---

[4]In response to *Hamdan*, Congress passed the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366 (Oct. 17, 2006), which includes a provision stating that no court shall have jurisdiction to hear an application for habeas corpus filed by an alien detained as an enemy combatant. The amendment includes a specific provision stating that it shall take effect on the date of enactment, "and shall apply to all cases, without exception, pending on or after the date of the enactment of this Act which relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001." On February 20, 2007, the D.C. Circuit applied the MCA and held that federal courts do not have jurisdiction over petitions for writs of habeas corpus filed by aliens detained as enemy combatants at Guantanamo Bay. *See Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *petition for cert. filed* March 5, 2007. The D.C. Circuit dismissed the habeas case in its entirety for lack of jurisdiction.

In their responsive brief, Plaintiffs argue that, even if the new jurisdictional statute is applicable to this case, the facts demonstrate that Defendant's home office must be in South Dakota because Meta Payment Systems, one of its subsidiaries and largest revenue generators, is in South Dakota. Plaintiffs cite no legal authority for this proposition and the Court is not convinced by Plaintiffs' argument. It is undisputed that Defendant's Federal Stock Charter says the bank's home office is in Storm Lake, Iowa.

Under 12 U.S.C. § 1464(x), MidCountry is a citizen of Minnesota[5] and Defendant Metabank is a citizen of Iowa. With First Midwest being a citizen of South Dakota, complete diversity of citizenship exists among the parties and removal of this suit from state court to federal court pursuant to 28 U.S.C. § 1441(a) is proper. Accordingly,

IT IS ORDERED that the Motion to Remand, doc. 16, is denied.

Dated this 23rd day of March, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY
(SEAL)   DEPUTY

---

[5]In the initial briefing, MidCountry contended that, although its principal place of business is Minnesota, it has national citizenship because it has banking operations in Minnesota, Illinois and Georgia. In the supplemental briefing on the applicability of 12 U.S.C. § 1464(x), MidCountry does not deny that its home office is in Minnesota.